274 So.2d 89

Benjaman McDADE, alias

v.

STATE.

3 Div. 103.

Court of Criminal Appeals of Alabama.

Sept. 12, 1972.

Rehearing Denied Oct. 10, 1972.

Alfred W. Goldthwaite, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and John A. Yung IV, Asst. Atty. Gen., for the State.

PER CURIAM.

Appellant was convicted of murder in the second degree and his punishment was fixed at imprisonment in the penitentiary for a term of fifty years. The homicide occurred on November 25, 1969.

The burden of the argument in brief of appellant seems to be that this cause should be reversed because of the cumulative effect of alleged errors during the trial of the case. Much of the argument is really directed to the weight of the evidence, which is of course a question for the jury, if the evidence is properly admitted.

■ In the case at bar the sufficiency of the evidence is not before this court since no motion to exclude it was made by appellant when the State rested its case, the affirmative charge was not requested and no motion for a new trial made after the verdict. Sharp v. State, 21 Ala.App. 262, 107 So. 228; Alabama Digest, Criminal Law, ⬅1028, 1044, 10630(1).

■ The appellant complains that his constitutional rights were violated by the failure of the officers who took statements from him, amounting to confessions, to advise him of those rights under the rule of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The record

shows that each of the officers who talked with or took a written statement from appellant fully advised him of his rights under *Miranda,* supra, beforehand and it further appears from the record that there were no promises made, threats, inducements or other pressures put on appellant to cause him to confess. These several written statements, including the one written by appellant in longhand, were clearly admissible and no error appears in the action of the court in overruling objections thereto by appellant, on any grounds assigned.

"\* \* \* After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. \* \* \*" Miranda v. State of Arizona, supra; Bridges v. State, 284 Ala. 412, 225 So.2d 821.

The appellant in chambers outside of the presence of the jury made known to the court and District Attorney that he had a witness unable to attend court who would testify for the defense that she resided only a few doors from the Shrader home, where the incident occurred, and at approximately 11:15 a. m., on January 8, 1970, (approximately six weeks after the homicide for which McDade was convicted), she heard her front door bell ring but did not answer the door; that she went back toward her kitchen and heard a loud noise and then heard a door open between her kitchen and den and saw a Negro man, not the defendant, whom she described as to age, size, and clothing, about to come through the door; that she slammed the door and ran; that he gained access to the house by slipping out a louver pane of glass; that her husband was not at home, having gone to work.

This out-of-court hearing was prompted by the desire of the appellant's attorney to know whether he could use the incident in an opening statement to the jury. He had advised the court that he expected the State to agree that the witness would testify as he had advised the court.

The court in effect sustained the State's objections by advising the attorney that the testimony would not be admissible because of the length of time elapsing between the case at bar and the proposed testimony, and the attorney reserved an exception.

■ The rule is that whether evidence is admissible because of the remoteness of time is largely in the trial court's discretion. Smitherman v. State, 33 Ala.App. 316, 33 So.2d 396; Dorch v. State, 40 Ala. App. 475, 115 So.2d 287; numerous cases cited and discussed in McElroy, Law of Evidence in Alabama, Section 21, pages 6 and 7.

In *Smitherman,* supra, this court stated,

"Ordinarily, remoteness of time affects the weight and probative value of evidence rather than its admissibility. It rests largely in the enlightened discretion of the court whether or not such proof will be allowed. Remoteness has regard also to factors and considerations other than mere lapse of time. It results, therefore, that it is practically impossible and not at all accurate to attempt to state a fixed rule or standard with particular reference to the time element. Of course it can be said with certainty that the tendered evidence must not be so remote in point of time as to be without casual connection or logical relation to the main event. Notwithstanding evidence may be logically relevant, its admissibility does not follow unless it has some probative value to the inquiry of instant concern.

"The late Justice Thomas of the Supreme Court stated the following rule in Sorrell v. Scheuer, 209 Ala. 268, 96 So. 216, 217: 'As a general rule, facts are deemed relevant which logically tend to prove or disprove the fact in issue, or which afford a reasonable inference or shed light upon the matter contested;

and facts bearing so remotely upon or collaterally to the issue that they afford merely conjectural inference concerning the facts in issue should not be admitted in evidence.' See also Martin v. State, 16 Ala.App. 406, 78 So. 322; Barnes v. State, 31 Ala.App. 187, 14 So.2d 242; Taylor v. State, 31 Ala.App. 590, 20 So. 2d 239."

■ We think the probative value of this testimony of an event happening some six weeks after the incident in the case at bar would be negligible, if any. No attempt to harm the lady was made and the most that could be said was that there was a breaking and entering nearby. While we do not attempt to lay down a hard and fast rule as to time, under the circumstances in this case, we do not think the court abused its discretion in refusing to allow this occurrence in evidence. Authorities, supra.

Specimens of hair, both pubic and from the head of defendant, were taken by the state toxicologist for examination and comparisons with other hair found on the clothes of the deceased and under her body at the mortuary. At this time, the Miranda rights had been explained several times to the appellant, who took the hair, above mentioned, from his body with a comb and did not protest or offer any objection, according to the testimony of the toxicologist and the appellant. The toxicologist was questioned closely by the attorneys and by the court while he was a witness.

■ However, it seems to be the law that clothing, hair and other physical evidence are not communicative or testimonial and therefore it is not violative of the constitutional rights of a defendant to require him to surrender this type of evidence against himself. An able and exhaustive treatment of this principle is set out in Hubbard v. State, 283 Ala. 183, 215 So.2d 261. In this case it appears that the defendant was required to disrobe and give his clothes to the officers and the hair which fell from his body for examina-

tion. We quote from the Majority opinion on the rehearing of *Hubbard* as follows:

"* * * The privilege is against being compelled to be a witness or give evidence against self. If the clothes of defendant are taken from him forcibly and manually by police officers, he is compelled to surrender the clothes and thus give evidence against himself just as much as if, as in the instant case, he is compelled by the show of overwhelming force to take off the clothes and surrender them himself. Where the police officers manually remove the clothes, the force is actually exercised. Where defendant removes the clothes himself, the force is merely threatened to be exercised. In either case, defendant is compelled and the evidence is equally admissible or inadmissible. The defendant is not compelled in either case to be a witness against himself. He is not the witness, the clothing is.

"In the instant case, we are of opinion that defendant's clothing and the hairs from his body were real or physical evidence and were not evidence of a testimonial or communicative nature. Accordingly, we hold that admission of the clothing and hairs into evidence did not violate defendant's privilege under the constitution which guarantees that, in a criminal prosecution he shall not be compelled to give evidence against himself."

■ No error appears in the introduction of the exhibits and testimony with regard to this evidence.

■ It is further contended that the court erred in questioning State's witness Rabon, the toxicologist. The court asked only a few questions which were relevant to the issue and not prejudicial to the appellant's rights. This is the privilege of a trial court, in so far as the questions and testimony elicited thereby is admissible and not prejudicial to the defendant's rights. Patrick v. State, 43 Ala.App. 338, 190 So. 2d 551; Lovejoy v. State, 33 Ala.App. 414, 34 So.2d 692.

■ Further, no objection was made to any of the questions propounded by the court. Where no objection is made, nor motion for a new trial, the matter is not before this court for review. Walker v. State, 265 Ala. 233, 90 So.2d 221; Lovejoy v. State, supra; Cauley v. State, 33 Ala. App. 557, 36 So.2d 347; Sharp v. State, supra.

■ Four pictures of the body of the deceased were offered in evidence as State Exhibits Nos. 15, 16, 17 and 19. The pictures are of the same general character and show they were taken from different angles or positions from the body. The court, when the pictures were marked for identification, remarked that only one would be allowed in evidence; but when the formal offer to introduce them was made, they were received without objection and apparently the court did not know these exhibits were included along with other pictures of the inside of the house. It appears that the introduction of the exhibits in question was the result of confusion on the part of the attorneys and that the court did not know his pronouncement was not being carried out. However that may be, we do not think this error resulted in substantial injury to the rights of the appellant and no reversible error appears.

We have examined the entire record and conclude there was no error of a reversible nature in any of the rulings of the court on admission of testimony, the court having been lenient in many rulings in favor of appellant. Having found no error in the record to reverse, the case is due to be affirmed.

The foregoing opinion was prepared by W. J. HARALSON, Supernumerary Circuit Judge, and was adopted by the court as its opinion.

Affirmed.

All Judges concur.